FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 14 2026

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SHELBY HANUSKA and ASHLEY NICOLE HORNE, and all others similarly situated** — **PLAINTIFFS**

**VS.** **CASE NO.** 4:26-cv-831-DPM

**CONDUENT INCORPORATED AND CONDUENT STATE & LOCAL SOLUTIONS, INC.** — **DEFENDANTS**

## NOTICE OF REMOVAL

Defendants Conduent Incorporated and Conduent State & Local Solutions, Inc. ("Defendants") hereby remove this action from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Central Division. Removal is based on the Class Action Fairness Act (28 U.S.C. § 1332(d)), sections 1441, 1446, and 1453 of the same Title, and on the following grounds:

## STATEMENT OF JURISDICTION

1. Removal of this action is proper because this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 (CAFA). *See* 28 U.S.C. § 1332(d). CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which there is minimal diversity, there are 100 or more putative class members, and where the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. *See* 28 U.S.C. § 1453(b).

This case assigned to District Judge Marshall
and to Magistrate Judge Moore

2. This case meets all of CAFA's requirements for removal. Plaintiffs Shelby Hanuska and Ashley Nicole Horne both aver to be Arkansas residents and filed this putative class action in Arkansas against Defendants.

3. Both Defendants are incorporated in New York and maintain a principal places of business in New Jersey, so there is minimal diversity.

4. Plaintiffs seek to represent a nationwide class of SNAP beneficiaries that they allege is "in the tens of thousands of individuals nationwide," each of whom allegedly sustained damages "ranging from $50 to over $1,300 per household," arising from thefts that Plaintiffs allege "resulted in losses in the hundreds of millions of dollars." (Compl. ¶¶ 29, 52, 62). So the numerosity and minimum damages-in-controversy requirements are satisfied, too.

5. In sum, the requirements for removal pursuant to CAFA are satisfied because: (1) there is minimal diversity; (2) the putative class contains far more than 100 members; and (3) the amount in controversy exceeds $5,000,000.

6. No exception to CAFA jurisdiction applies either, because the putative class is nationwide and no Defendant is a citizen of Arkansas.

## PLEADINGS, PROCESS, AND ORDERS

7. On July 2, 2026, Plaintiffs filed a Putative Class Action Complaint asserting claims for negligence, breach of contract as third-party beneficiaries, and intrusion upon seclusion, entitled *Shelby Hanuska and Ashley Nicole Horne, and all others similarly situated v. Conduent Incorporated and Conduent State & Local Solutions, Inc.*, Case No. 60CV-26-8464, in the Circuit Court of Pulaski County,

Arkansas (the "State Court Action"). A true and correct copy of the Complaint filed in the State Court Action is attached hereto as Exhibit 1.

8. On July 16, 2026, Plaintiffs served Defendant Conduent State & Local Solutions, Inc. with a summons and the Complaint through its registered agent.

9. On July 22, 2026, Plaintiffs served Defendant Conduent Incorporated with a summons and the Complaint through its registered agent.

10. In the Complaint, Plaintiffs seek recovery for the following: (1) restitution of all SNAP benefits allegedly stolen from putative class members' EBT accounts through unauthorized transactions during the class period; (2) compensatory damages for alleged consequential harms, including food insecurity, emergency food purchases, transportation costs, and time spent attempting to recover stolen benefits; (3) declaratory relief; (4) injunctive relief; (5) punitive damages; and (6) attorneys' fees, costs, and prejudgment interest. (Ex. 1, Compl., Prayer for Relief). Defendants deny all of Plaintiffs' alleged claims, deny any wrongdoing, deny that Plaintiffs are entitled to any individual or putative class relief, and deny that any class could be properly certified.

11. Plaintiffs seek to represent the following class:

> [A]ll individuals who were enrolled in SNAP and whose benefits were stolen through unauthorized transactions between January 1, 2025, and the present, where the EBT account was administered, processed, or maintained by Conduent, and where the theft occurred under circumstances inconsistent with point-of-sale skimming, including but not limited to thefts from cards or accounts which were not yet activated at the time of the theft.

(Ex. 1, Compl. ¶ 51).

## PROCEDURAL PREREQUISITES

12. Copies of all process, pleadings, and orders served upon Defendants in the State Court Action are attached hereto as Exhibit 2. *See* 28 U.S.C. § 1446(a).

13. Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing of Notice of Removal, together with a copy of this Notice of Removal, will be filed with the Clerk of the Circuit Court of Pulaski County, Arkansas, and written notice of the filing will be served on Plaintiffs' counsel of record.

14. Defendants are filing respective Corporate Disclosure Statements pursuant to Federal Rule of Civil Procedure 7.1 concurrently with this Notice of Removal.

15. Removal to this Court is proper pursuant to 28 U.S.C. § 1446 because the State Court Action is currently pending in the Circuit Court of Pulaski County, Arkansas, which is located within this district and division.

16. By filing this Notice of Removal, Defendants do not waive, and expressly reserve, all defenses, objections, and rights available to them, including without limitation any objection to personal jurisdiction, venue, or sufficiency of service of process, any challenge to the sufficiency of Plaintiffs' pleadings, any opposition to class certification, and any right to compel arbitration.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

### Jurisdiction Pursuant to the Class Action Fairness Act

17. This Court has original jurisdiction of this action pursuant to CAFA. Section 4 of CAFA, codified at 28 U.S.C. § 1332(d)(2), states as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . .

18. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), and one that Defendants may remove to this Court pursuant to 28 U.S.C. §§ 1446 and 1453.

**There Are At Least 100 Members in Plaintiffs' Putative Class**

19. This action has been styled as a putative class action. (Ex. 1, Compl. at 1).

20. CAFA requires the existence of at least 100 members in Plaintiffs' putative class. 28 U.S.C. § 1332(d)(5)(B).

21. This requirement is met. Plaintiffs allege that Conduent "administers EBT systems for approximately thirty-seven states and millions of Americans," that "[i]n Arkansas alone, state DHS data documents hundreds of individual fraud victims," and that "[f]or the entirety of the impacted beneficiaries, the class is believed to be in the tens of thousands of individuals nationwide." (Ex. 1, Compl. ¶ 52). Plaintiffs further allege that "thousands of SNAP recipients—like Plaintiffs—across multiple states had their benefits stolen through unauthorized transactions." (Ex. 1, Compl. ¶ 8).

22. Accordingly, there are far more than 100 prospective class members. *See* 28 U.S.C. § 1332(d)(5)(B); *Davis v. Citibank, N.A.*, 2014 WL 6673520, at *1-2 (E.D. Mo. Nov. 24, 2014) (where Plaintiff's complaint alleged "that 'it is estimated that

there are hundreds of members' of the class[,]" the court found "[t]he class size is apparent from the face of [Plaintiff's] complaint, and this is sufficient to meet the CAFA jurisdictional requirement for numerosity.").

**Minimal Diversity Exists**

23. CAFA's "minimal" diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).

24. "For diversity purposes, a person is a citizen of the state in which that person is domiciled, and a corporation is a citizen of any state in which it is incorporated and of the state in which it has its principal place of business." *Chandler v. Jacobs Eng'g Grp., Inc.*, 2012 WL 3678639, at *1 (E.D. Ark. Aug. 27, 2012); *see also* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

25. Plaintiff Shelby Hanuska is alleged to be "a resident of Clarksville, Arkansas." (Ex. 1, Compl. ¶ 14). Plaintiff Ashley Nicole Horne is alleged to be "a resident of Dardanelle, Arkansas." (*Id.* ¶ 15). Plaintiffs are accordingly citizens of the State of Arkansas. *See* 28 U.S.C. § 1332(a)(1).

26. Plaintiffs bring this action on behalf of not only themselves but also a putative nationwide class of SNAP beneficiaries whose EBT accounts were administered, processed, or maintained by Conduent, spanning the "approximately thirty-seven states" in which Conduent is alleged to provide EBT services. (Ex. 1, Compl. ¶¶ 51–52).

27. Defendant Conduent Incorporated "is a New York corporation with its principal place of business in Florham Park, New Jersey." (Ex. 1, Compl. ¶ 17). At all relevant times, and as of the date of this removal, Conduent Incorporated has been and remains a citizen of the States of New York and New Jersey for purposes of determining CAFA diversity jurisdiction.

28. Defendant Conduent State & Local Solutions, Inc. "is headquartered in Florham Park, New Jersey." (Ex. 1, Compl. ¶ 16). At all relevant times, and as of the date of this removal, Conduent State & Local Solutions, Inc. has been and remains incorporated under the laws of the State of New York with its principal place of business in Florham Park, New Jersey, and is accordingly a citizen of the States of New York and New Jersey.

29. No Defendant is a citizen of the State of Arkansas. Therefore, Plaintiffs—and indeed every Arkansas member of the putative class—are citizens of a State different from each Defendant, which satisfies CAFA's minimal diversity requirement. 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).

**The Amount in Controversy Exceeds $5 Million**

30. The Class Action Fairness Act authorizes the removal of class actions in which the aggregate amount in controversy, exclusive of interest and costs, for all potential class members exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

31. Defendants deny Plaintiffs' claims of wrongdoing, deny all of their requests for relief, and deny that any class could be properly certified. But Plaintiffs' own allegations and requests for relief demonstrate that the aggregate amount "in

controversy" here—that is, the aggregate value of the relief Plaintiffs seek—exceeds $5,000,000.

32. Plaintiffs allege that the putative class "is believed to be in the tens of thousands of individuals nationwide." (Ex. 1, Compl. ¶ 52). Plaintiffs further allege that "[d]irect damages include the dollar amount of stolen benefits, ranging from $50 to over $1,300 per household." (Ex. 1, Compl. ¶ 62). Taking Plaintiffs' own allegations at face value, a class of twenty thousand members sustaining average direct damages of $250 would alone place $5,000,000 in controversy.

33. Plaintiffs also allege that "[t]he 2025 wave of thefts is believed to have resulted in losses in the hundreds of millions of dollars," and they seek "[r]estitution of all SNAP benefits stolen from Class members' EBT accounts through unauthorized transactions during the class period." (Ex. 1, Compl. ¶ 29, Prayer for Relief ¶ A). By Plaintiffs' own framing, the restitution claim alone places a sum far in excess of $5,000,000 in controversy.

34. Plaintiffs additionally seek compensatory damages for consequential harms, punitive damages, and an award of attorneys' fees. (Ex. 1, Compl., Prayer for Relief ¶¶ B, E, F).

35. Finally, Plaintiffs seek injunctive relief requiring Defendants to implement enumerated, platform-wide security measures, including "chip-enabled EBT cards, randomized card numbers, robust IVR authentication with behavioral analytics, real-time transaction monitoring with automated anomaly detection, and role-based access controls with comprehensive audit logging." (Ex. 1, Compl. ¶ 56).

The cost to Defendants of the injunctive relief Plaintiffs demand further increases the amount in controversy.

**TIMELINESS OF REMOVAL**

36. Conduent State & Local Solutions, Inc. was served with the summons and Complaint on July 16, 2026. Conduent Incorporated was served with the summons and Complaint on July 22, 2026. This Notice of Removal is timely because it is filed within thirty (30) days after service upon each Defendant. 28 U.S.C. § 1446(b)(1), (b)(2)(B). No previous notice of removal has been filed in this action.

**NOTICE TO PLAINTIFFS**

37. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of Arkansas, written notice of such filing will be served on Plaintiffs' counsel of record. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Pulaski County, Arkansas. *See* 28 U.S.C. § 1446(d).

WHEREFORE for the foregoing reasons, this Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, and removal of the action to this Court is proper pursuant to 28 U.S.C. §§ 1446 and 1453. Accordingly, Defendants respectfully remove this action to this Court.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: chickman@wlj.com

By ______________________________
P. Collins Hickman Jr. (2020189)

*And*

Nathaniel Haas (pro hac vice forthcoming)
WATSTEIN TEREPKA LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
Tel: (213) 526-1880
nhaas@wtlaw.com

Matthew B. Peters (pro hac vice forthcoming)
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 912-8095
mpeters@wtlaw.com

*Attorneys for Conduent Incorporated and Conduit State & Local Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, a copy of the foregoing was served via ECF and email on the following:

Hank Bates
Randy Pulliam
Samuel R. Jackson
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
hbates@cbplaw.com
rpulliam@cbplaw.com
sjackson@cbplaw.com

*Attorneys for Plaintiffs and Proposed Class*

P. Collins Hickman Jr.

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-02 17:56:15
60CV-26-8464
C06D11 : 19 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

| | |
|---|---|
| SHELBY HANUSKA and ASHLEY NICOLE HORNE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONDUENT INCORPORATED AND CONDUENT STATE & LOCAL SOLUTIONS, INC.<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Shelby Hanuska and Ashley Nicole Horne ("Plaintiffs") bring this action against Defendants Conduent Incorporated and Conduent State & Local Solutions, Inc. (collectively, "Conduent" or "Defendants") for civil remedies arising out of Conduent's failure to properly safeguard information and financial benefits associated with Plaintiffs' Supplemental Nutrition Assistance Program and Electronic Benefit Transfer accounts, which led to the theft of those benefits and Plaintiffs' deprivation of those benefits to purchase food for their families.

## I. NATURE OF THE ACTION

1. Plaintiffs and the proposed Class members are individuals who received entitlements to financial assistance under the Supplemental Nutrition Assistance Program ("SNAP"), which provides funding to individuals to help cover the costs of food for themselves and their families. SNAP benefits can be assigned to individuals directly or through certain programs, such as the Summer EBT program.

2. Conduent contracts with state agencies across the country to administer EBT services on their behalf for the express purpose of delivering SNAP benefits to eligible recipients.

EXHIBIT
1

Conduent's responsibilities under these contracts include creating and managing the process for distributing electronic benefit transfer cards ("EBT cards") which recipients can use to purchase covered items, assigning and delivering funds to each account according to the recipient's SNAP benefit, and operating systems to assist those users with problems or issues they have with their EBT cards. Conduent processes tens of millions of dollars annually through its benefit processing services.[1]

3. In addition to administering and directing SNAP funds to EBT accountholders, these contracts obligate Conduent to ensure the EBT accounts are secure and protected against fraud and theft.

4. Conduent, however, failed to keep its systems secure. As a result of this failure, SNAP benefits were stolen from recipients' accounts in a wave of thefts throughout 2025, including cases where benefits were stolen before recipients received their cards, before recipients activated their cards, before recipients established a PIN, and within hours of funds being loaded to recipients' accounts. Conduent's security failures are *still* occurring for many SNAP beneficiaries.

5. Conduent has a documented history of failing to maintain adequate security for its EBT systems. In September 2025, DHS officials discussed Conduent employees and contractors who had been recently terminated and allegedly arrested for improperly accessing EBT card numbers. These employees were reportedly engaged in misconduct during the summer of 2024

---

[1] Press Release, Conduent Inc., "Conduent Collaborates with Alabama to Introduce Chip-Enabled SNAP Cards to Prevent EBT Fraud" (Feb. 13, 2026), https://investor.conduent.com/news-releases/news-release-details/conduent-collaborates-alabama-introduce-chip-enabled-snap-cards/ ("Conduent is a national leader in government payment disbursements, and it currently supports electronic payments for public programs in 37 states."); *see also* Paul Gates, Gen. Manager, Conduent State & Fed. Gov't Bus., Statement to Oklahoma Legislature Interim Study (Oct. 19, 2020), https://oksenate.gov/sites/default/files/2020-10/Oklahoma%20Interim%20Study%20Conduent%20Statement%20_0.pdf ("Our Government Payment Services division provides one or more of our services in 37 States.").

and terminated in January or early February 2025. This documented security failure demonstrates that Conduent was on notice of vulnerabilities in its EBT security architecture before and during the 2025 thefts.

6. However, Conduent's responses to SNAP benefit thefts place the blame on the recipients themselves, suggesting these thefts occurred because they likely exercised poor PIN hygiene or failed to ensure their cards or EBT account numbers were secure.[2] But these explanations cannot account for the theft of funds from cards that were never received or activated, or for which the cardholders never established a PIN. Nor do they explain the vast reports of funds drained from accounts within hours of those funds being submitted to the EBT accounts or via transactions occurring at a small number of sandwich shops and delis in Philadelphia, New York, and New Jersey.

7. Internal state DHS agency communications[3] indicate those agencies are skeptical that these conditions are the cause. Instead, they suspect the cause includes systemic exfiltration of data by unauthorized third parties that included actual EBT card numbers and/or sufficient data to reverse-engineer the algorithm that generates card numbers. The scheme includes a "PIN-spraying" campaign aimed at guessing correct PIN numbers or setting up PIN numbers through Conduent's Interactive Voice Response ("IVR") system for the previously exfiltrated active card numbers. Once the card number and PIN were obtained, the cloned card could be used at any terminal selected by the thieves.

---

[2] Many DHS agencies provide the same underwhelming statements concerning the cause for these thefts, encouraging EBT recipients to reset their PINs. *See* Press Release, Ark. Dep't Hum. Servs., DHS Requiring Summer EBT Recipients to Reset PINs In Response to Theft Reports (May 30, 2026), https://humanservices.arkansas.gov/news/dhs-requiring-summer-ebt-recipients-to-reset-pins-in-response-to-theft-reports/. DHS makes these statements despite their own skepticism of Conduent's focus on blaming cardholders for not practicing good PIN hygiene.

[3] DHS agency communications were obtained via FOIA requests.

8. Due to Conduent's inadequate security measures, thousands of SNAP recipients—like Plaintiffs—across multiple states had their benefits stolen through unauthorized transactions. These thefts have resulted in real and immediate harm: families have been unable to provide adequate food for their children, forcing them to dip into funds previously allocated to other planned expenditures, or, worse still, rely on food banks, charitable donations, and the kindness of neighbors and family to avoid going hungry. Because reimbursement for these funds is no longer available, these families, parents, and individuals have no recourse and no relief.

9. SNAP recipients are among the most vulnerable members of our society. They include single parents working part-time while attending school, families with young children, and individuals living paycheck to paycheck who depend on these benefits to put food on the table. These are people for whom the loss of even a single month's benefits can mean the difference between feeding their families and going hungry.

10. Plaintiffs bring this case on behalf of all SNAP benefit recipients whose benefits were stolen as a result of Conduent's failure to properly safeguard their benefits. They bring claims for negligence and breach of contract (as third-party beneficiaries) and seek relief in the form of actual and compensatory damages, as well as declaratory relief.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to the Arkansas Constitution, Article 7, § 11, and Ark. Code Ann. § 16-13-201, because Plaintiffs assert claims arising under the laws of the State of Arkansas and the common law.

12. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business in the State of Arkansas. Conduent entered into a contract with Arkansas DHS to administer SNAP benefits on behalf of

the State, which requires Conduent to comply with all applicable state and federal laws, rules, regulations, and policies relating to the RFP and the resulting contract.[4] Conduent operates customer service centers serving Arkansas beneficiaries and processes EBT transactions for Arkansas residents through its centralized platforms.[5]

13. Venue is proper in Pulaski County, Arkansas, pursuant to Ark. Code Ann. § 16-60-101(a), because Pulaski County is the county in which a substantial part of the events giving rise to the claims occurred: the Arkansas Department of Human Services, which contracted with Conduent for EBT services, is headquartered in Pulaski County; Conduent's contractual obligations to Arkansas DHS were to be performed in connection with state agency operations centered in Pulaski County; and the systemic failures in benefit administration and security that harmed Plaintiffs and the Class originated from and affected the statewide EBT program administered through Pulaski County.

## III. PARTIES

14. Plaintiff Shelby Hanuska is a resident of Clarksville, Arkansas. Ms. Hanuska was entitled to receive SNAP benefits and her benefits were stolen through unauthorized transactions.

15. Plaintiff Ashley Nicole Horne is a resident of Dardanelle, Arkansas. Mrs. Horne was entitled to receive SNAP benefits for her children's enrolling in the Summer EBT program, and her benefits were stolen through unauthorized transactions.

16. Defendant Conduent State & Local Solutions, Inc. is headquartered in Florham Park, New Jersey, and it is the entity that contracts directly with state agencies for EBT services, through which Conduent manages and processes claims for tens of millions of dollars annually

---

[4] *See* Arkansas RFP Section 211(A), requiring compliance with all laws, rules, and regulations.

[5] *See Electronic Benefits Transfer (EBT) Services*, CONDUENT (May 9, 2017), https://insights.conduent.com/brochures/ebt-services.

on behalf of government agencies.[6] As the contracting party, Conduent State & Local Solutions, Inc. assumed contractual obligations to provide secure EBT services, including the duty to provide "a secure system environment, support and operational procedures designed to identify and prevent fraud," and bears contractual liability for "any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor."

17. Defendant Conduent Incorporated is a New York corporation with its principal place of business in Florham Park, New Jersey, and is the parent company of Conduent State & Local Solutions, Inc. Conduent Incorporated is liable on theories of joint enterprise, agency, and alter ego. The Conduent entities operate as a single integrated enterprise: they share common headquarters in Florham Park, New Jersey; they utilize centralized platforms to process EBT benefits across all client states; they hold themselves out collectively as "Conduent" in contracts and public communications; and the security failures at issue affected the unified Conduent infrastructure rather than any single subsidiary. Conduent Incorporated controls the data security policies, network infrastructure, and employee access controls that are at the center of this litigation.

## IV. FACTUAL ALLEGATIONS

### A. Conduent Administers State SNAP Benefit Entitlements

18. SNAP, or the Supplemental Nutrition Assistance Program, is the largest federal nutrition assistance program, providing benefits to low-income individuals and families to help them purchase food. SNAP benefits are delivered through Electronic Benefit Transfer ("EBT")

[6] *Conduent Recognized As 'GovTech 100' Company for Third Consecutive Year*, CONDUENT BUS. SERVS., LLC (Jan. 9, 2024 at 08:43 ET), https://investor.conduent.com/news-releases/news-release-details/conduent-recognized-govtech-100-company-third-consecutive-year/.

cards, which function like debit cards and can be used at authorized retailers to purchase eligible food items.

19. In Arkansas, the Arkansas Department of Human Services ("AR DHS") is the state agency responsible for administering SNAP benefits. AR DHS contracted with Conduent to provide EBT services for Arkansas beneficiaries.

20. Conduent is one of the largest EBT service providers in the United States. Through its centralized administrative systems, Conduent processes benefit transactions, manages EBT card issuance and activation, operates customer service call centers, and maintains the Interactive Voice Response ("IVR") system that allows beneficiaries to check balances and manage their accounts.[7]

21. Critically, the agreements between Conduent and the state agencies for which it administers EBT accounts clearly identify SNAP recipients as the intended beneficiaries of their agreements. For example, Arkansas' request for proposal requires the contract to establish a system "for the delivery of cash and [SNAP] benefits" to recipients.[8] Moreover, the agreements recognize that failure to ensure an effective system "causes severe stress to the cardholders."[9]

**B. Conduent was Required to Ensure System Security**

22. Conduent's EBT contracts with state agencies impose specific security obligations. These contracts typically require Conduent to provide secure system environments as well as methods to identify and prevent fraud alongside support procedures for benefit holders. They are also required to ensure fraud protection to stop unauthorized access by any person, report instances

---

[7] *See Conduent Expands Deployment of EBT Solutions to Prevent Fraud and Improve Customer Experiences Across U.S. States*, CONDUENT INC. (July 22, 2025 at 08:45 ET), https://investor.conduent.com/news-releases/news-release-details/conduent-expands-deployment-ebt-solutions-prevent-fraud-and.

[8] Arkansas RFP § 1.1.

[9] *Id* § 2.22.

of suspected fraud, and comply with all applicable state and federal laws, rules, regulations, and policies relating to information security, confidentiality, privacy, and compliance.

23. Standard EBT contract terms require Conduent to "disclose any breaches of privacy or security" within one business day of the breach. These contracts further provide that Conduent is liable for "any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor."[10]

24. In addition, Conduent's agreement imposes obligations that extend to the recipients, requiring it to "provide a security process to ensure that access to the EBT System shall not be compromised by any unauthorized access."[11]

**C. Conduent Failed to Ensure Security**

25. Beginning in late 2024 and continuing through 2025, SNAP beneficiaries across multiple states began reporting that their benefits had been stolen through unauthorized transactions.[12] News reports documented a nationwide wave of EBT fraud affecting beneficiaries whose funds were drained before they could use them.[13]

26. Critically, the theft patterns are *inconsistent* with traditional point-of-sale skimming and are consistent with a backend system compromise. Conduent's inadequate security infrastructure—including, on information and belief, its failure to implement encryption, network

---

[10] *Id.* § 2.11(E); RFP 2.22(C)(3).
[11] *Id* § 2.9(C).
[12] Press Release, Me. Dep't of Health & Hum. Servs., Maine DHHS Alerts EBT Cardholders to Take Precautions Amid Reported Multi-State Benefit Theft (Aug. 15, 2025), https://www.maine.gov/dhhs/news/maine-dhhs-alerts-ebt-cardholders-take-precautions-amid-reported-multi-state-benefit-theft-thu-08142025-1200; Cassidy Williams, *I-Team: After Millions of Stolen SNAP Benefits, More Security Options Are Coming*, WFSB (Apr. 3, 2025, at 16:49 CT), https://www.wfsb.com/2025/04/03/i-team-after-millions-stolen-snap-benefits-more-security-options-are-coming/; *Stolen FNS Benefits*, N.C. DEP'T OF HEALTH & HUM. SERVS., https://www.ncdhhs.gov/divisions/child-and-family-well-being/food-and-nutrition-services-food-stamps/stolen-fns-benefits (last visited June 23, 2026).
[13] Aliss Higham, *SNAP Benefit Theft Explodes Across US*, NEWSWEEK (June 10, 2025, at 03:08 ET), https://www.newsweek.com/snap-benefit-theft-explodes-across-us-2082664; Anastassia Olmos, *Families Suffer As $12 Billion Stolen from Food Assistance Programs, USDA Says*, ATLANTA NEWS FIRST (Aug. 12, 2025, at 11:03 CT), https://www.atlantanewsfirst.com/2025/08/11/usda-estimates-12-billion-stolen-annually-food-assistance-programs/

segmentation, multi-factor authentication, and intrusion detection—created vulnerabilities that allowed unauthorized access to EBT cardholder data.

27. Conduent's response to these thefts as being cardholder-specific issues and therefore not due to a systemic security issue is vague and unpersuasive: Conduent has failed to provide adequate reassurance to the state DHS offices that its systems were secure and not the subject of a breach, and moreover has admitted that its focus is not on monitoring transactions or rectifying systemic vulnerabilities but on identifying fraudulent terminals (which are easy for fraudsters to re-establish).

28. Officials from various state DHS agencies—informally named the "Snap Fraud Squad"—communicated quite openly about their suspicion that Conduent's access controls were insufficient to protect the benefits for EBT card holders, as well as their suspicion that the thefts were the result of skimming cards at point of sale.

**D. Conduent's Failure Led to Loss of Benefits**

29. State DHS agencies have compiled data documenting hundreds of individual SNAP fraud reports. The data from these reports reveals patterns inconsistent with traditional point-of-sale skimming and consistent with a backend system compromise. The 2025 wave of thefts is believed to have resulted in losses in the hundreds of millions of dollars.[14]

30. The transaction data shows benefits from cardholders across multiple states overwhelmingly used at small grocery stores, delis, and markets in the Philadelphia, New Jersey, and New York areas—far from the beneficiaries who reported the thefts.

31. Multiple beneficiaries reported that benefits were spent before they ever received their physical cards in the mail, or that they activated cards and found zero balances. Analysis of

---

[14] Suzanne Blake, *SNAP Benefits: Warning Issued on Major Problem*, NEWSWEEK (Apr. 6, 2026 at 03:45 ET), https://www.newsweek.com/snap-benefits-warning-issued-on-major-problem-11789472.

the Arkansas victim reports reveals that *hundreds* of thefts occurred from cards that had not yet been activated at the time of the theft. This pattern of thefts occurring before cards were activated, received, and before PINs were set by cardholders is unexplainable by skimming and is consistent with a backend system compromise.

32. To date, Conduent has not provided any substantive answers or implemented successful changes to its security system. Conduent has generally failed to respond to DHS requests for assurances that the SNAP thefts are not system-related, and focused its responsive efforts not on monitoring transactions, but only shutting down corrupt terminals. These actions demonstrate Conduent's failure to investigate system-level compromise while focusing exclusively on a skimming narrative that cannot explain pre-activation theft.

33. Conduent's response to the theft wave demonstrates a systematic failure to investigate evidence of a system-level breach while deflecting responsibility onto retail-level skimming. State DHS officials from across the country documented this pattern through their communications in the multi-state "SNAP Fraud Squad" group.

34. Despite multiple direct inquiries from state officials at the highest levels—Conduent failed to provide assurances, failed to investigate system-level compromise, and failed to notify states of known vulnerabilities. This pattern of evasion and concealment persisted—in violation of its contractual duties—as SNAP benefits continued to be stolen from families across the country.

**E. The Theft of Benefits Continues**

36. Despite awareness of the security vulnerabilities described above, the theft of EBT benefits from Arkansas families continues. In June 2026, Arkansas DHS confirmed that Summer EBT benefits are *again* being stolen from families across the state using the same methods. DHS

Director of County Operations Mary Franklin confirmed that over 200 families have reported losses, though she believes the actual number of impacted families is higher.

37. The 2026 Summer EBT thefts follow the same pattern as the earlier thefts alleged in this Complaint. Fraudulent transactions are occurring at out-of-state locations in the Northeast, including New York, Pennsylvania, New Jersey, and Massachusetts—the same geographic pattern identified in the 2024-2025 theft wave. Benefits are being drained before families can use them, with some families discovering their cards have zero balances upon first attempting to use them.

38. The continuing thefts demonstrate that Conduent's security measures remain inadequate. Director Franklin conceded that DHS cannot guarantee the thefts will stop: "I don't think we can ever say with 100% certainty that this won't happen again. People who are intent on doing bad things look for new ways."[15] This admission underscores Conduent's ongoing failure to implement security measures sufficient to protect beneficiary data and benefits from theft.

## V. PLAINTIFF ALLEGATIONS

### Plaintiff Hanuska

39. Plaintiff Shelby Hanuska receives approximately $530 per month in SNAP benefits and has an eighteen-month-old son.

40. On July 4, 2025, approximately $536 of Ms. Hanuska's SNAP benefits were stolen through unauthorized transactions.

41. Using the Propel application, Ms. Hanuska confirmed her balance of $537 at midnight on July 4, 2025. By approximately 2:50–3:00 a.m. that same morning, her entire balance had been depleted through unauthorized transactions in Pennsylvania and New Jersey.

42. Ms. Hanuska has never visited Pennsylvania or New Jersey.

---

[15] "'Who takes food from kids?' Hundreds stolen from Arkansas families in EBT scams," Fox16, https://www.fox16.com/crime/who-takes-food-from-kids-hundreds-stolen-from-arkansas-families-in-ebt-scams/

43. Ms. Hanuska went to the DHS office the following Monday and was told that as of January 2025, DHS had stopped reimbursing beneficiaries for stolen SNAP benefits.

44. Ms. Hanuska has had to rely on food banks and a DHS caseworker who brought food to her home to feed her family.

**Plaintiff Horne**

45. Plaintiff Ashley Nicole Horne's Summer EBT benefits were stolen before she or her husband could activate their card, set up a PIN, or create an EBT account.

46. Mrs. Horne's children receive Summer EBT benefits because all children at their school receive free lunch through a grant program, which automatically qualifies them for Summer EBT during the summer months. Their EBT benefit was valued at $240.00.

47. Mrs. Horne and her husband had recently moved and called to update their address and request a new card. Approximately four weeks later, when the card finally arrived, their benefits had already been drained—the card had a $0 balance before they ever opened the envelope.

48. Neither Mrs. Horne nor her husband had set up a PIN, downloaded an EBT app, or signed any terms and conditions prior to the theft. They only downloaded the app afterward to see where the fraudulent transactions had occurred.

49. Mrs. Horne anticipated using the SNAP benefit funds to assist with paying for food for their children over the summer; being deprived of these benefits required her and her husband to re-allocate funds from other intended areas to pay for groceries.

50. This pre-activation theft pattern—where benefits were stolen before the cardholder could possibly have been skimmed—is consistent with a backend system compromise rather than point-of-sale skimming.

## VI. Class Allegations

51. Plaintiffs bring these claims on behalf of the following proposed class: all individuals who were enrolled in SNAP and whose benefits were stolen through unauthorized transactions between January 1, 2025, and the present, where the EBT account was administered, processed, or maintained by Conduent, and where the theft occurred under circumstances inconsistent with point-of-sale skimming, including but not limited to thefts from cards or accounts which were not yet activated at the time of the theft.

52. **Numerosity**: Conduent administers EBT systems for approximately thirty-seven states and millions of Americans. In Arkansas alone, state DHS data documents hundreds of individual fraud victims. For the entirety of the impacted beneficiaries, the class is believed to be in the tens of thousands of individuals nationwide.

53. **Commonality and Predominance:** Common questions predominate this litigation because the core liability inquiry is systemic: Commonality arises from the uniform Conduent platform, the same security vulnerabilities affecting all thirty-seven Conduent client states, the same IVR vulnerability, the same predictable card-numbering system, and the same inadequate security architecture. Individual questions (amount stolen, date of theft, card activation status) go to damages, not liability, and can be resolved through Conduent's own transactional records without individualized mini-trials. The damages model is formulaic: each class member's damages equal the dollar amount of unauthorized transactions on their EBT account, determinable from Conduent's transaction logs. Questions of law and fact common to this litigation include:

a. Whether Conduent's security practices were inadequate to protect SNAP beneficiary data and benefits;

b. Whether Conduent's EBT systems were compromised through security vulnerabilities, insider fraud, and/or other unauthorized access;

c. Whether SNAP beneficiaries are intended third-party beneficiaries of the EBT contracts between Conduent and state agencies;

d. Whether Conduent breached its contractual, common law, and statutory duties to protect SNAP benefits from theft.

54. **Typicality and Adequacy**: Plaintiffs are typical of the class because their claims arise from the same systemic security failures as all class members. Plaintiffs experienced pre-activation theft or theft at out-of-state terminals—the same patterns affecting the class. Plaintiffs have retained documentation, can articulate concrete financial harm, and will adequately represent the class. Plaintiffs have retained adequate counsel.

55. **Superiority and Manageability**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The individual damages suffered by most class members—while significant relative to their individual circumstances—are too small to support individual litigation, meaning that absent a class action, most class members would have no effective remedy. The damages model is formulaic and can be administered through Conduent's own transactional records.

56. **Injunctive Relief**: Conduent has acted on grounds that apply generally to the class, making injunctive and declaratory relief appropriate. Conduent's inadequate security affects all class members uniformly, and prospective relief — including implementation of chip-enabled EBT cards, randomized card numbers, robust IVR authentication with behavioral analytics, real-time transaction monitoring with automated anomaly detection, and role-based access controls with comprehensive audit logging — would benefit the entire class.

57. **Certification of Issues**: Under Rule 23(c), particular issues are appropriate for certification, including the common liability questions identified above.

## CAUSES OF ACTION

### COUNT I
### Negligence

58. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

59. To establish a claim for negligence, Plaintiffs must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the breach was the actual and proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages.

60. Conduent collected, maintained, and processed SNAP beneficiaries' EBT account information and financial benefits and had a duty to exercise reasonable care in safeguarding that account information and protecting those benefits from unauthorized access and theft. This duty included implementing adequate credential management, encryption, multi-factor authentication, network segregation, intrusion detection, transaction monitoring, and access controls.

61. Conduent breached these duties by: (1) storing EBT account data without encryption on an internet-accessible network; (2) failing to implement multi-factor authentication; (3) lacking network segmentation that would have contained intrusions; (4) failing to implement adequate intrusion detection systems; (5) permitting insider fraud through inadequate access controls; (6) maintaining an IVR system vulnerable to PIN-spraying attacks without behavioral analytics; and/or (7) using predictable card-numbering algorithms that enabled attackers to enumerate valid card numbers.

62. Conduent's security failures were the actual and proximate cause of Plaintiffs' damages. Unlike traditional data breach cases where damages are speculative future risk of

identity theft, the damages here are concrete and already realized. Beneficiaries' SNAP accounts were drained, leaving them without food assistance. Direct damages include the dollar amount of stolen benefits, ranging from $50 to over $1,300 per household. Consequential damages include food insecurity, emergency food bank reliance, transportation costs to DHS offices, and time spent navigating nonfunctional customer service systems.

**COUNT II**
**Breach of Contract**

63. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

64. To establish a claim for breach of contract as third-party beneficiaries, Plaintiffs must prove: (1) the existence of a valid contract between the promisor and promisee; (2) that the contract was intended to benefit the third party; (3) that the promisor breached the contract; and (4) that the breach caused damages to the third-party beneficiary.

65. Plaintiffs are third-party beneficiaries of the contracts between various state DHS agencies and Conduent. Conduent entered into EBT service contracts with state agencies across the country. Under these contracts, Conduent was obligated to secure beneficiary data, monitor for fraud, report vulnerabilities, and comply with data-security standards.

66. SNAP beneficiaries are intended third-party beneficiaries of these contracts because the contracts exist for the express purpose of delivering and protecting benefits to those individuals. The RFP systems through which contracts are submitted make clear the purpose of such agreements is "for the delivery of cash and Supplemental Nutrition Assistance Program benefits" to provide services to the states' eligible recipients. Moreover, the RFPs make clear that failure to abide by the RFP requirements would cause harm to those same SNAP beneficiaries.

This express acknowledgment that unauthorized disclosure would cause compensable harm to the individuals whose information is disclosed supports third-party beneficiary status.

67. Conduent breached its contractual obligations in multiple ways, including: (a) failing to distribute funds to beneficiaries, (b) failing to adhere to the security standards outlined in the contract; and (c) failure to investigate the security issues and implement effective security procedures.

68. Conduent also bears liability under the contract for any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor.

69. As a direct and proximate result of Conduent's breaches, Plaintiffs and Class members suffered damages including the dollar value of stolen benefits, consequential damages foreseeable at the time of contracting, including beneficiary food insecurity and remediation costs, and any indemnification obligations under the contract.

**COUNT III**
**Intrusion upon Seclusion**

70. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

71. To establish a claim for invasion of privacy by intrusion upon seclusion, Plaintiffs must prove: (1) Plaintiffs sustained damages; (2) Defendant intruded upon Plaintiffs' solitude or seclusion; (3) the intrusion would be highly offensive to a reasonable person; (4) Plaintiffs acted in a manner consistent with an actual expectation of privacy; and (5) Defendant's intrusion was a proximate cause of plaintiff's damages.

72. Plaintiffs clearly have suffered damages—they lost access to crucial funds, causing them and their families hardship by having a lessened ability to purchase food.

73. Conduent's substandard security measures led to an intrusion upon Plaintiffs' solitude or seclusion, as Conduent allowed unauthorized third parties to obtain Plaintiffs' finances, which interfered with Plaintiffs' ability to engage in their normal, everyday lives, such as purchasing food for themselves and their families.

74. These intrusions would undoubtedly be highly offensive to a reasonable person—a reasonable person would strongly object to their SNAP funds being stolen and consequently struggling to feed herself and her family.

75. Plaintiffs manifested an undoubtable expectation of privacy in their SNAP funds—they protected their card PINs and did not publicly share the information needed to make a purchase with their SNAP benefits.

76. Conduent's substandard security measures were plainly a proximate cause of Plaintiffs' injuries—it is entirely foreseeable that failing to adhere to security standards outlined in a contract could lead to SNAP benefits getting stolen.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award relief against Defendants as follows:

A. Restitution of all SNAP benefits stolen from Class members' EBT accounts through unauthorized transactions during the class period, in concrete dollar amounts determinable from Conduent's transaction records;

B. Compensatory damages for consequential harms including food insecurity, emergency food purchases, transportation to food banks and DHS offices, and time spent attempting to recover stolen benefits;

C. Declaratory relief establishing that Conduent's security practices were inadequate and that the theft wave resulted from system-level compromise;

D. Injunctive relief requiring Conduent to implement the security improvements described herein;

E. Punitive damages where Conduent's conduct was willful or knowing;

F. Attorneys' fees, costs, and prejudgment interest;

Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to the Arkansas Rules of Civil Procedure, Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: July 2, 2026

Respectfully submitted,

*/s/ Sam Jackson*

Hank Bates (SBN 98063)
hbates@cbplaw.com
Randy Pulliam (SBN 98105)
rpulliam@cbplaw.com
Samuel R. Jackson (SBN 2013247)
sjackson@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

*Attorneys for Plaintiffs and Proposed Class*

ARCourts

# 60CV-26-8464: SHEKBY HANUSKA ET AL V CONDUENT INCORPORATED ET AL

## Case Summary

Case Number
60CV-26-8464

Filing Date
07/02/2026

Court
PULASKI CIRCUIT

Case Type
CIVIL - OTHER

Status
CASE OPEN

EXHIBIT
2

## Case Participants

| Name | Type | Alias |
|---|---|---|
| HON. PATRICIA ANN JAMES - 11TH DIVISION 6TH CIRCUIT | JUDGE | JAMES |
| HANUSKA, SHELBY | PLAINTIFF | None |
| HORNE, ASHLEY NICOLE | PLAINTIFF | None |
| JACKSON, SAMUEL RANDOLPH | PLAINTIFF/PETITIONER ATTORNEY | None |
| BATES III, JOSEPH HENRY | PLAINTIFF/PETITIONER ATTORNEY | BATES, HANK,III, JOSEPH HENRY BATES |
| PULLIAM, RANDALL KEITH | PLAINTIFF/PETITIONER ATTORNEY | PULLIAM, RANDALL K,PULLIAM, RANDALL K. |
| CONDUENT INCORPORATED | DEFENDANT | None |
| CONDUENT STATE & LOCAL SOLUTIONS INC | DEFENDANT | None |

## Case Events

No Events

## Offenses

No Offenses

## Sentences

Case 4:26-cv-00831-DPM Document 1 Filed 08/14/26 Page 33 of 61

## No Sentences

# Milestone Tracks

## No Milestones

## Docket Entries

| Filing Date | Description | Docket Detail | Name | Documents |
|---|---|---|---|---|
| 07/02/2026 @ 5:56PM | MOF ORIGINAL | None | JACKSON, SAMUEL RANDOLPH | None |
| 07/02/2026 @ 5:56PM | COMPLAINT/PETITION FILED $ | None | JACKSON, SAMUEL RANDOLPH | WEB |
| 07/02/2026 @ 5:56PM | AOC COVERSHEET CIVIL | None | JACKSON, SAMUEL RANDOLPH | None |
| 07/06/2026 @ 11:15AM | PAYMENT RECEIVED | A Payment of $165.00 was made on receipt 60CI593752. | None | None |
| 07/10/2026 @ 8:21AM | SUMMONS ISSUED | None | JACKSON, SAMUEL RANDOLPH | WEB |
| 07/13/2026 @ 9:16AM | SUMMONS ISSUED | None | JACKSON, SAMUEL RANDOLPH | WEB |
| 07/13/2026 @ 9:16AM | SUMMONS FEE 21-6-402 $ | None | JACKSON, SAMUEL RANDOLPH | None |
| 07/13/2026 @ 10:52AM | PAYMENT RECEIVED | A Payment of $2.50 was made on receipt 60CI594621. | None | None |

| Filing Date | Description | Docket Detail | Name | Documents |
|---|---|---|---|---|
| 08/05/2026 @ 11:02AM | AFFIDAVIT OF SERVICE | 7-16-26 - CONDUENT STATE & LOCAL SOLUTIONS, INC. | JACKSON, SAMUEL RANDOLPH | None |
| 08/05/2026 @ 11:02AM | AFFIDAVIT OF SERVICE | 7-22-26 - CONDUENT INCORPORATED | JACKSON, SAMUEL RANDOLPH | None |

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-02 17:56:15
60CV-26-8464
C06D11 : 19 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

| | |
|---|---|
| SHELBY HANUSKA and ASHLEY NICOLE HORNE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONDUENT INCORPORATED AND CONDUENT STATE & LOCAL SOLUTIONS, INC.<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Shelby Hanuska and Ashley Nicole Horne ("Plaintiffs") bring this action against Defendants Conduent Incorporated and Conduent State & Local Solutions, Inc. (collectively, "Conduent" or "Defendants") for civil remedies arising out of Conduent's failure to properly safeguard information and financial benefits associated with Plaintiffs' Supplemental Nutrition Assistance Program and Electronic Benefit Transfer accounts, which led to the theft of those benefits and Plaintiffs' deprivation of those benefits to purchase food for their families.

## I. NATURE OF THE ACTION

1. Plaintiffs and the proposed Class members are individuals who received entitlements to financial assistance under the Supplemental Nutrition Assistance Program ("SNAP"), which provides funding to individuals to help cover the costs of food for themselves and their families. SNAP benefits can be assigned to individuals directly or through certain programs, such as the Summer EBT program.

2. Conduent contracts with state agencies across the country to administer EBT services on their behalf for the express purpose of delivering SNAP benefits to eligible recipients.

Conduent's responsibilities under these contracts include creating and managing the process for distributing electronic benefit transfer cards ("EBT cards") which recipients can use to purchase covered items, assigning and delivering funds to each account according to the recipient's SNAP benefit, and operating systems to assist those users with problems or issues they have with their EBT cards. Conduent processes tens of millions of dollars annually through its benefit processing services.[1]

3. In addition to administering and directing SNAP funds to EBT accountholders, these contracts obligate Conduent to ensure the EBT accounts are secure and protected against fraud and theft.

4. Conduent, however, failed to keep its systems secure. As a result of this failure, SNAP benefits were stolen from recipients' accounts in a wave of thefts throughout 2025, including cases where benefits were stolen before recipients received their cards, before recipients activated their cards, before recipients established a PIN, and within hours of funds being loaded to recipients' accounts. Conduent's security failures are *still* occurring for many SNAP beneficiaries.

5. Conduent has a documented history of failing to maintain adequate security for its EBT systems. In September 2025, DHS officials discussed Conduent employees and contractors who had been recently terminated and allegedly arrested for improperly accessing EBT card numbers. These employees were reportedly engaged in misconduct during the summer of 2024

[1] Press Release, Conduent Inc., "Conduent Collaborates with Alabama to Introduce Chip-Enabled SNAP Cards to Prevent EBT Fraud" (Feb. 13, 2026), https://investor.conduent.com/news-releases/news-release-details/conduent-collaborates-alabama-introduce-chip-enabled-snap-cards/ ("Conduent is a national leader in government payment disbursements, and it currently supports electronic payments for public programs in 37 states."); *see also* Paul Gates, Gen. Manager, Conduent State & Fed. Gov't Bus., Statement to Oklahoma Legislature Interim Study (Oct. 19, 2020), https://oksenate.gov/sites/default/files/2020-10/Oklahoma%20Interim%20Study%20Conduent%20Statement%20_0.pdf ("Our Government Payment Services division provides one or more of our services in 37 States.").

and terminated in January or early February 2025. This documented security failure demonstrates that Conduent was on notice of vulnerabilities in its EBT security architecture before and during the 2025 thefts.

6. However, Conduent's responses to SNAP benefit thefts place the blame on the recipients themselves, suggesting these thefts occurred because they likely exercised poor PIN hygiene or failed to ensure their cards or EBT account numbers were secure.[2] But these explanations cannot account for the theft of funds from cards that were never received or activated, or for which the cardholders never established a PIN. Nor do they explain the vast reports of funds drained from accounts within hours of those funds being submitted to the EBT accounts or via transactions occurring at a small number of sandwich shops and delis in Philadelphia, New York, and New Jersey.

7. Internal state DHS agency communications[3] indicate those agencies are skeptical that these conditions are the cause. Instead, they suspect the cause includes systemic exfiltration of data by unauthorized third parties that included actual EBT card numbers and/or sufficient data to reverse-engineer the algorithm that generates card numbers. The scheme includes a "PIN-spraying" campaign aimed at guessing correct PIN numbers or setting up PIN numbers through Conduent's Interactive Voice Response ("IVR") system for the previously exfiltrated active card numbers. Once the card number and PIN were obtained, the cloned card could be used at any terminal selected by the thieves.

---

[2] Many DHS agencies provide the same underwhelming statements concerning the cause for these thefts, encouraging EBT recipients to reset their PINs. *See* Press Release, Ark. Dep't Hum. Servs., DHS Requiring Summer EBT Recipients to Reset PINs In Response to Theft Reports (May 30, 2026), https://humanservices.arkansas.gov/news/dhs-requiring-summer-ebt-recipients-to-reset-pins-in-response-to-theft-reports/. DHS makes these statements despite their own skepticism of Conduent's focus on blaming cardholders for not practicing good PIN hygiene.

[3] DHS agency communications were obtained via FOIA requests.

8. Due to Conduent's inadequate security measures, thousands of SNAP recipients—like Plaintiffs—across multiple states had their benefits stolen through unauthorized transactions. These thefts have resulted in real and immediate harm: families have been unable to provide adequate food for their children, forcing them to dip into funds previously allocated to other planned expenditures, or, worse still, rely on food banks, charitable donations, and the kindness of neighbors and family to avoid going hungry. Because reimbursement for these funds is no longer available, these families, parents, and individuals have no recourse and no relief.

9. SNAP recipients are among the most vulnerable members of our society. They include single parents working part-time while attending school, families with young children, and individuals living paycheck to paycheck who depend on these benefits to put food on the table. These are people for whom the loss of even a single month's benefits can mean the difference between feeding their families and going hungry.

10. Plaintiffs bring this case on behalf of all SNAP benefit recipients whose benefits were stolen as a result of Conduent's failure to properly safeguard their benefits. They bring claims for negligence and breach of contract (as third-party beneficiaries) and seek relief in the form of actual and compensatory damages, as well as declaratory relief.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to the Arkansas Constitution, Article 7, § 11, and Ark. Code Ann. § 16-13-201, because Plaintiffs assert claims arising under the laws of the State of Arkansas and the common law.

12. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business in the State of Arkansas. Conduent entered into a contract with Arkansas DHS to administer SNAP benefits on behalf of

the State, which requires Conduent to comply with all applicable state and federal laws, rules, regulations, and policies relating to the RFP and the resulting contract.[4] Conduent operates customer service centers serving Arkansas beneficiaries and processes EBT transactions for Arkansas residents through its centralized platforms.[5]

13. Venue is proper in Pulaski County, Arkansas, pursuant to Ark. Code Ann. § 16-60-101(a), because Pulaski County is the county in which a substantial part of the events giving rise to the claims occurred: the Arkansas Department of Human Services, which contracted with Conduent for EBT services, is headquartered in Pulaski County; Conduent's contractual obligations to Arkansas DHS were to be performed in connection with state agency operations centered in Pulaski County; and the systemic failures in benefit administration and security that harmed Plaintiffs and the Class originated from and affected the statewide EBT program administered through Pulaski County.

## III. PARTIES

14. Plaintiff Shelby Hanuska is a resident of Clarksville, Arkansas. Ms. Hanuska was entitled to receive SNAP benefits and her benefits were stolen through unauthorized transactions.

15. Plaintiff Ashley Nicole Horne is a resident of Dardanelle, Arkansas. Mrs. Horne was entitled to receive SNAP benefits for her children's enrolling in the Summer EBT program, and her benefits were stolen through unauthorized transactions.

16. Defendant Conduent State & Local Solutions, Inc. is headquartered in Florham Park, New Jersey, and it is the entity that contracts directly with state agencies for EBT services, through which Conduent manages and processes claims for tens of millions of dollars annually

[4] *See* Arkansas RFP Section 211(A), requiring compliance with all laws, rules, and regulations.

[5] *See Electronic Benefits Transfer (EBT) Services*, CONDUENT (May 9, 2017), https://insights.conduent.com/brochures/ebt-services.

on behalf of government agencies.[6] As the contracting party, Conduent State & Local Solutions, Inc. assumed contractual obligations to provide secure EBT services, including the duty to provide "a secure system environment, support and operational procedures designed to identify and prevent fraud," and bears contractual liability for "any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor."

17. Defendant Conduent Incorporated is a New York corporation with its principal place of business in Florham Park, New Jersey, and is the parent company of Conduent State & Local Solutions, Inc. Conduent Incorporated is liable on theories of joint enterprise, agency, and alter ego. The Conduent entities operate as a single integrated enterprise: they share common headquarters in Florham Park, New Jersey; they utilize centralized platforms to process EBT benefits across all client states; they hold themselves out collectively as "Conduent" in contracts and public communications; and the security failures at issue affected the unified Conduent infrastructure rather than any single subsidiary. Conduent Incorporated controls the data security policies, network infrastructure, and employee access controls that are at the center of this litigation.

## IV. FACTUAL ALLEGATIONS

### A. Conduent Administers State SNAP Benefit Entitlements

18. SNAP, or the Supplemental Nutrition Assistance Program, is the largest federal nutrition assistance program, providing benefits to low-income individuals and families to help them purchase food. SNAP benefits are delivered through Electronic Benefit Transfer ("EBT")

[6] *Conduent Recognized As 'GovTech 100' Company for Third Consecutive Year*, CONDUENT BUS. SERVS., LLC (Jan. 9, 2024 at 08:43 ET), https://investor.conduent.com/news-releases/news-release-details/conduent-recognized-govtech-100-company-third-consecutive-year/.

cards, which function like debit cards and can be used at authorized retailers to purchase eligible food items.

19. In Arkansas, the Arkansas Department of Human Services ("AR DHS") is the state agency responsible for administering SNAP benefits. AR DHS contracted with Conduent to provide EBT services for Arkansas beneficiaries.

20. Conduent is one of the largest EBT service providers in the United States. Through its centralized administrative systems, Conduent processes benefit transactions, manages EBT card issuance and activation, operates customer service call centers, and maintains the Interactive Voice Response ("IVR") system that allows beneficiaries to check balances and manage their accounts.[7]

21. Critically, the agreements between Conduent and the state agencies for which it administers EBT accounts clearly identify SNAP recipients as the intended beneficiaries of their agreements. For example, Arkansas' request for proposal requires the contract to establish a system "for the delivery of cash and [SNAP] benefits" to recipients.[8] Moreover, the agreements recognize that failure to ensure an effective system "causes severe stress to the cardholders."[9]

**B. Conduent was Required to Ensure System Security**

22. Conduent's EBT contracts with state agencies impose specific security obligations. These contracts typically require Conduent to provide secure system environments as well as methods to identify and prevent fraud alongside support procedures for benefit holders. They are also required to ensure fraud protection to stop unauthorized access by any person, report instances

---

[7] *See Conduent Expands Deployment of EBT Solutions to Prevent Fraud and Improve Customer Experiences Across U.S. States*, CONDUENT INC. (July 22, 2025 at 08:45 ET), https://investor.conduent.com/news-releases/news-release-details/conduent-expands-deployment-ebt-solutions-prevent-fraud-and.

[8] Arkansas RFP § 1.1.

[9] *Id* § 2.22.

of suspected fraud, and comply with all applicable state and federal laws, rules, regulations, and policies relating to information security, confidentiality, privacy, and compliance.

23. Standard EBT contract terms require Conduent to "disclose any breaches of privacy or security" within one business day of the breach. These contracts further provide that Conduent is liable for "any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor."[10]

24. In addition, Conduent's agreement imposes obligations that extend to the recipients, requiring it to "provide a security process to ensure that access to the EBT System shall not be compromised by any unauthorized access."[11]

### C. Conduent Failed to Ensure Security

25. Beginning in late 2024 and continuing through 2025, SNAP beneficiaries across multiple states began reporting that their benefits had been stolen through unauthorized transactions.[12] News reports documented a nationwide wave of EBT fraud affecting beneficiaries whose funds were drained before they could use them.[13]

26. Critically, the theft patterns are *inconsistent* with traditional point-of-sale skimming and are consistent with a backend system compromise. Conduent's inadequate security infrastructure—including, on information and belief, its failure to implement encryption, network

---

[10] *Id.* § 2.11(E); RFP 2.22(C)(3).
[11] *Id* § 2.9(C).
[12] Press Release, Me. Dep't of Health & Hum. Servs., Maine DHHS Alerts EBT Cardholders to Take Precautions Amid Reported Multi-State Benefit Theft (Aug. 15, 2025), https://www.maine.gov/dhhs/news/maine-dhhs-alerts-ebt-cardholders-take-precautions-amid-reported-multi-state-benefit-theft-thu-08142025-1200; Cassidy Williams, *I-Team: After Millions of Stolen SNAP Benefits, More Security Options Are Coming*, WFSB (Apr. 3, 2025, at 16:49 CT), https://www.wfsb.com/2025/04/03/i-team-after-millions-stolen-snap-benefits-more-security-options-are-coming/; *Stolen FNS Benefits*, N.C. DEP'T OF HEALTH & HUM. SERVS., https://www.ncdhhs.gov/divisions/child-and-family-well-being/food-and-nutrition-services-food-stamps/stolen-fns-benefits (last visited June 23, 2026).
[13] Aliss Higham, *SNAP Benefit Theft Explodes Across US*, NEWSWEEK (June 10, 2025, at 03:08 ET), https://www.newsweek.com/snap-benefit-theft-explodes-across-us-2082664; Anastassia Olmos, *Families Suffer As $12 Billion Stolen from Food Assistance Programs, USDA Says*, ATLANTA NEWS FIRST (Aug. 12, 2025, at 11:03 CT), https://www.atlantanewsfirst.com/2025/08/11/usda-estimates-12-billion-stolen-annually-food-assistance-programs/

segmentation, multi-factor authentication, and intrusion detection—created vulnerabilities that allowed unauthorized access to EBT cardholder data.

27. Conduent's response to these thefts as being cardholder-specific issues and therefore not due to a systemic security issue is vague and unpersuasive: Conduent has failed to provide adequate reassurance to the state DHS offices that its systems were secure and not the subject of a breach, and moreover has admitted that its focus is not on monitoring transactions or rectifying systemic vulnerabilities but on identifying fraudulent terminals (which are easy for fraudsters to re-establish).

28. Officials from various state DHS agencies—informally named the "Snap Fraud Squad"—communicated quite openly about their suspicion that Conduent's access controls were insufficient to protect the benefits for EBT card holders, as well as their suspicion that the thefts were the result of skimming cards at point of sale.

**D. Conduent's Failure Led to Loss of Benefits**

29. State DHS agencies have compiled data documenting hundreds of individual SNAP fraud reports. The data from these reports reveals patterns inconsistent with traditional point-of-sale skimming and consistent with a backend system compromise. The 2025 wave of thefts is believed to have resulted in losses in the hundreds of millions of dollars.[14]

30. The transaction data shows benefits from cardholders across multiple states overwhelmingly used at small grocery stores, delis, and markets in the Philadelphia, New Jersey, and New York areas—far from the beneficiaries who reported the thefts.

31. Multiple beneficiaries reported that benefits were spent before they ever received their physical cards in the mail, or that they activated cards and found zero balances. Analysis of

[14] Suzanne Blake, *SNAP Benefits: Warning Issued on Major Problem*, NEWSWEEK (Apr. 6, 2026 at 03:45 ET), https://www.newsweek.com/snap-benefits-warning-issued-on-major-problem-11789472.

the Arkansas victim reports reveals that *hundreds* of thefts occurred from cards that had not yet been activated at the time of the theft. This pattern of thefts occurring before cards were activated, received, and before PINs were set by cardholders is unexplainable by skimming and is consistent with a backend system compromise.

32. To date, Conduent has not provided any substantive answers or implemented successful changes to its security system. Conduent has generally failed to respond to DHS requests for assurances that the SNAP thefts are not system-related, and focused its responsive efforts not on monitoring transactions, but only shutting down corrupt terminals. These actions demonstrate Conduent's failure to investigate system-level compromise while focusing exclusively on a skimming narrative that cannot explain pre-activation theft.

33. Conduent's response to the theft wave demonstrates a systematic failure to investigate evidence of a system-level breach while deflecting responsibility onto retail-level skimming. State DHS officials from across the country documented this pattern through their communications in the multi-state "SNAP Fraud Squad" group.

34. Despite multiple direct inquiries from state officials at the highest levels—Conduent failed to provide assurances, failed to investigate system-level compromise, and failed to notify states of known vulnerabilities. This pattern of evasion and concealment persisted—in violation of its contractual duties—as SNAP benefits continued to be stolen from families across the country.

**E. The Theft of Benefits Continues**

36. Despite awareness of the security vulnerabilities described above, the theft of EBT benefits from Arkansas families continues. In June 2026, Arkansas DHS confirmed that Summer EBT benefits are *again* being stolen from families across the state using the same methods. DHS

Director of County Operations Mary Franklin confirmed that over 200 families have reported losses, though she believes the actual number of impacted families is higher.

37. The 2026 Summer EBT thefts follow the same pattern as the earlier thefts alleged in this Complaint. Fraudulent transactions are occurring at out-of-state locations in the Northeast, including New York, Pennsylvania, New Jersey, and Massachusetts—the same geographic pattern identified in the 2024-2025 theft wave. Benefits are being drained before families can use them, with some families discovering their cards have zero balances upon first attempting to use them.

38. The continuing thefts demonstrate that Conduent's security measures remain inadequate. Director Franklin conceded that DHS cannot guarantee the thefts will stop: "I don't think we can ever say with 100% certainty that this won't happen again. People who are intent on doing bad things look for new ways."[15] This admission underscores Conduent's ongoing failure to implement security measures sufficient to protect beneficiary data and benefits from theft.

## V. PLAINTIFF ALLEGATIONS

### Plaintiff Hanuska

39. Plaintiff Shelby Hanuska receives approximately $530 per month in SNAP benefits and has an eighteen-month-old son.

40. On July 4, 2025, approximately $536 of Ms. Hanuska's SNAP benefits were stolen through unauthorized transactions.

41. Using the Propel application, Ms. Hanuska confirmed her balance of $537 at midnight on July 4, 2025. By approximately 2:50–3:00 a.m. that same morning, her entire balance had been depleted through unauthorized transactions in Pennsylvania and New Jersey.

42. Ms. Hanuska has never visited Pennsylvania or New Jersey.

[15] "'Who takes food from kids?' Hundreds stolen from Arkansas families in EBT scams," Fox16, https://www.fox16.com/crime/who-takes-food-from-kids-hundreds-stolen-from-arkansas-families-in-ebt-scams/

43. Ms. Hanuska went to the DHS office the following Monday and was told that as of January 2025, DHS had stopped reimbursing beneficiaries for stolen SNAP benefits.

44. Ms. Hanuska has had to rely on food banks and a DHS caseworker who brought food to her home to feed her family.

**Plaintiff Horne**

45. Plaintiff Ashley Nicole Horne's Summer EBT benefits were stolen before she or her husband could activate their card, set up a PIN, or create an EBT account.

46. Mrs. Horne's children receive Summer EBT benefits because all children at their school receive free lunch through a grant program, which automatically qualifies them for Summer EBT during the summer months. Their EBT benefit was valued at $240.00.

47. Mrs. Horne and her husband had recently moved and called to update their address and request a new card. Approximately four weeks later, when the card finally arrived, their benefits had already been drained—the card had a $0 balance before they ever opened the envelope.

48. Neither Mrs. Horne nor her husband had set up a PIN, downloaded an EBT app, or signed any terms and conditions prior to the theft. They only downloaded the app afterward to see where the fraudulent transactions had occurred.

49. Mrs. Horne anticipated using the SNAP benefit funds to assist with paying for food for their children over the summer; being deprived of these benefits required her and her husband to re-allocate funds from other intended areas to pay for groceries.

50. This pre-activation theft pattern—where benefits were stolen before the cardholder could possibly have been skimmed—is consistent with a backend system compromise rather than point-of-sale skimming.

## VI. Class Allegations

51. Plaintiffs bring these claims on behalf of the following proposed class: all individuals who were enrolled in SNAP and whose benefits were stolen through unauthorized transactions between January 1, 2025, and the present, where the EBT account was administered, processed, or maintained by Conduent, and where the theft occurred under circumstances inconsistent with point-of-sale skimming, including but not limited to thefts from cards or accounts which were not yet activated at the time of the theft.

52. **Numerosity**: Conduent administers EBT systems for approximately thirty-seven states and millions of Americans. In Arkansas alone, state DHS data documents hundreds of individual fraud victims. For the entirety of the impacted beneficiaries, the class is believed to be in the tens of thousands of individuals nationwide.

53. **Commonality and Predominance:** Common questions predominate this litigation because the core liability inquiry is systemic: Commonality arises from the uniform Conduent platform, the same security vulnerabilities affecting all thirty-seven Conduent client states, the same IVR vulnerability, the same predictable card-numbering system, and the same inadequate security architecture. Individual questions (amount stolen, date of theft, card activation status) go to damages, not liability, and can be resolved through Conduent's own transactional records without individualized mini-trials. The damages model is formulaic: each class member's damages equal the dollar amount of unauthorized transactions on their EBT account, determinable from Conduent's transaction logs. Questions of law and fact common to this litigation include:

a. Whether Conduent's security practices were inadequate to protect SNAP beneficiary data and benefits;

b. Whether Conduent's EBT systems were compromised through security vulnerabilities, insider fraud, and/or other unauthorized access;

c. Whether SNAP beneficiaries are intended third-party beneficiaries of the EBT contracts between Conduent and state agencies;

d. Whether Conduent breached its contractual, common law, and statutory duties to protect SNAP benefits from theft.

54. **Typicality and Adequacy**: Plaintiffs are typical of the class because their claims arise from the same systemic security failures as all class members. Plaintiffs experienced pre-activation theft or theft at out-of-state terminals—the same patterns affecting the class. Plaintiffs have retained documentation, can articulate concrete financial harm, and will adequately represent the class. Plaintiffs have retained adequate counsel.

55. **Superiority and Manageability**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The individual damages suffered by most class members—while significant relative to their individual circumstances—are too small to support individual litigation, meaning that absent a class action, most class members would have no effective remedy. The damages model is formulaic and can be administered through Conduent's own transactional records.

56. **Injunctive Relief**: Conduent has acted on grounds that apply generally to the class, making injunctive and declaratory relief appropriate. Conduent's inadequate security affects all class members uniformly, and prospective relief — including implementation of chip-enabled EBT cards, randomized card numbers, robust IVR authentication with behavioral analytics, real-time transaction monitoring with automated anomaly detection, and role-based access controls with comprehensive audit logging — would benefit the entire class.

57. **Certification of Issues**: Under Rule 23(c), particular issues are appropriate for certification, including the common liability questions identified above.

## CAUSES OF ACTION

### COUNT I
### Negligence

58. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

59. To establish a claim for negligence, Plaintiffs must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the breach was the actual and proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages.

60. Conduent collected, maintained, and processed SNAP beneficiaries' EBT account information and financial benefits and had a duty to exercise reasonable care in safeguarding that account information and protecting those benefits from unauthorized access and theft. This duty included implementing adequate credential management, encryption, multi-factor authentication, network segregation, intrusion detection, transaction monitoring, and access controls.

61. Conduent breached these duties by: (1) storing EBT account data without encryption on an internet-accessible network; (2) failing to implement multi-factor authentication; (3) lacking network segmentation that would have contained intrusions; (4) failing to implement adequate intrusion detection systems; (5) permitting insider fraud through inadequate access controls; (6) maintaining an IVR system vulnerable to PIN-spraying attacks without behavioral analytics; and/or (7) using predictable card-numbering algorithms that enabled attackers to enumerate valid card numbers.

62. Conduent's security failures were the actual and proximate cause of Plaintiffs' damages. Unlike traditional data breach cases where damages are speculative future risk of

identity theft, the damages here are concrete and already realized. Beneficiaries' SNAP accounts were drained, leaving them without food assistance. Direct damages include the dollar amount of stolen benefits, ranging from $50 to over $1,300 per household. Consequential damages include food insecurity, emergency food bank reliance, transportation costs to DHS offices, and time spent navigating nonfunctional customer service systems.

**COUNT II**
**Breach of Contract**

63. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

64. To establish a claim for breach of contract as third-party beneficiaries, Plaintiffs must prove: (1) the existence of a valid contract between the promisor and promisee; (2) that the contract was intended to benefit the third party; (3) that the promisor breached the contract; and (4) that the breach caused damages to the third-party beneficiary.

65. Plaintiffs are third-party beneficiaries of the contracts between various state DHS agencies and Conduent. Conduent entered into EBT service contracts with state agencies across the country. Under these contracts, Conduent was obligated to secure beneficiary data, monitor for fraud, report vulnerabilities, and comply with data-security standards.

66. SNAP beneficiaries are intended third-party beneficiaries of these contracts because the contracts exist for the express purpose of delivering and protecting benefits to those individuals. The RFP systems through which contracts are submitted make clear the purpose of such agreements is "for the delivery of cash and Supplemental Nutrition Assistance Program benefits" to provide services to the states' eligible recipients. Moreover, the RFPs make clear that failure to abide by the RFP requirements would cause harm to those same SNAP beneficiaries.

This express acknowledgment that unauthorized disclosure would cause compensable harm to the individuals whose information is disclosed supports third-party beneficiary status.

67. Conduent breached its contractual obligations in multiple ways, including: (a) failing to distribute funds to beneficiaries, (b) failing to adhere to the security standards outlined in the contract; and (c) failure to investigate the security issues and implement effective security procedures.

68. Conduent also bears liability under the contract for any losses from transactions performed with cards issued but not activated by the Cardholder and/or the Contractor.

69. As a direct and proximate result of Conduent's breaches, Plaintiffs and Class members suffered damages including the dollar value of stolen benefits, consequential damages foreseeable at the time of contracting, including beneficiary food insecurity and remediation costs, and any indemnification obligations under the contract.

**COUNT III**
**Intrusion upon Seclusion**

70. Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully herein.

71. To establish a claim for invasion of privacy by intrusion upon seclusion, Plaintiffs must prove: (1) Plaintiffs sustained damages; (2) Defendant intruded upon Plaintiffs' solitude or seclusion; (3) the intrusion would be highly offensive to a reasonable person; (4) Plaintiffs acted in a manner consistent with an actual expectation of privacy; and (5) Defendant's intrusion was a proximate cause of plaintiff's damages.

72. Plaintiffs clearly have suffered damages—they lost access to crucial funds, causing them and their families hardship by having a lessened ability to purchase food.

73. Conduent's substandard security measures led to an intrusion upon Plaintiffs' solitude or seclusion, as Conduent allowed unauthorized third parties to obtain Plaintiffs' finances, which interfered with Plaintiffs' ability to engage in their normal, everyday lives, such as purchasing food for themselves and their families.

74. These intrusions would undoubtedly be highly offensive to a reasonable person—a reasonable person would strongly object to their SNAP funds being stolen and consequently struggling to feed herself and her family.

75. Plaintiffs manifested an undoubtable expectation of privacy in their SNAP funds—they protected their card PINs and did not publicly share the information needed to make a purchase with their SNAP benefits.

76. Conduent's substandard security measures were plainly a proximate cause of Plaintiffs' injuries—it is entirely foreseeable that failing to adhere to security standards outlined in a contract could lead to SNAP benefits getting stolen.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award relief against Defendants as follows:

A. Restitution of all SNAP benefits stolen from Class members' EBT accounts through unauthorized transactions during the class period, in concrete dollar amounts determinable from Conduent's transaction records;

B. Compensatory damages for consequential harms including food insecurity, emergency food purchases, transportation to food banks and DHS offices, and time spent attempting to recover stolen benefits;

C. Declaratory relief establishing that Conduent's security practices were inadequate and that the theft wave resulted from system-level compromise;

D. Injunctive relief requiring Conduent to implement the security improvements described herein;

E. Punitive damages where Conduent's conduct was willful or knowing;

F. Attorneys' fees, costs, and prejudgment interest;

Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to the Arkansas Rules of Civil Procedure, Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: July 2, 2026

Respectfully submitted,

*/s/ Sam Jackson*

Hank Bates (SBN 98063)
hbates@cbplaw.com
Randy Pulliam (SBN 98105)
rpulliam@cbplaw.com
Samuel R. Jackson (SBN 2013247)
sjackson@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

*Attorneys for Plaintiffs and Proposed Class*

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. PATRICIA ANN JAMES - 11TH DIVISION 6TH CIRCUIT**

SHEKBY HANUSKA ET AL V CONDUENT INCORPORATED ET AL

60CV-26-8464

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

CONDUENT STATE & LOCAL SOLUTIONS INC
Corp. Serv. Co.
300 S. Spring St., Suite 900
Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Samuel R Jackson
One Allied Drive
Ste 1400
LITTLE ROCK, AR 72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

/s/ Sima N. Dalal
Sima N. Dalal, DC

Date: 07/10/2026

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR 72201

No. 60CV-26-8464 This summons is for CONDUENT STATE & LOCAL SOLUTIONS INC (name of Defendant).

## PROOF OF SERVICE

☐ On ________________ [date] I personally delivered the summons and complaint to the defendant at ______________________________________________ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on ________________ [date] I left the summons and complaint in the close proximity of the defendant by ________________________________________________________ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On ________________ [date] I left the summons and complaint with _________________, a member of the defendant's family at least 18 years of age, at _________________________ [address], a place where the defendant resides; or

☐ On ________________ [date] I delivered the summons and complaint to _________________ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _________________________ [name of defendant]; or

☐ On ________________ [date] at ___________________________ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

___________________________________________________________________________

[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

___________________________________________________________________________

☐ I was unable to execute service because:

___________________________________________________________________________

___________________________________________________________________________

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: ______________ SHERIFF OF ________ COUNTY, ARKANSAS

By: ______________________________
[Signature of server]

______________________________
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: ______________ By: ______________________________
[Signature of server]

______________________________
[Printed name]

Address: ______________________________________________________________
______________________________________________________________

Phone: ______________________________

Subscribed and sworn to before me this date: ______________

______________________________
Notary Public

My commission expires: ____________________

Additional information regarding service or attempted service:
______________________________________________________________
______________________________________________________________

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. PATRICIA ANN JAMES - 11TH DIVISION 6TH CIRCUIT**

SHEKBY HANUSKA ET AL V CONDUENT INCORPORATED ET AL

60CV-26-8464

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

CONDUENT INCORPORATED
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NY 12207

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Samuel R Jackson
One Allied Drive
Ste 1400
LITTLE ROCK, AR 72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
• Notice of Right to Consent to Disposition of Case by a State District Court Judge

CLERK OF COURT

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR 72201

Jane Valenzuela, DC

Date: 07/13/2026

**NOTICE OF RIGHT TO CONSENT**
**TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE**

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk

Date: 07/13/2026

No. 60CV-26-8464 This summons is for CONDUENT INCORPORATED (name of Defendant).

## PROOF OF SERVICE

☐ On _________________ [date] I personally delivered the summons and complaint to the defendant at __________________________________________________ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _________________ [date] I left the summons and complaint in the close proximity of the defendant by ____________________________________________________________ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _________________ [date] I left the summons and complaint with __________________, a member of the defendant's family at least 18 years of age, at ___________________________ [address], a place where the defendant resides; or

☐ On _________________ [date] I delivered the summons and complaint to __________________ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of ___________________________ [name of defendant]; or

☐ On _________________ [date] at _____________________________ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

__________________________________________________________________________________

[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

__________________________________________________________________________________

☐ I was unable to execute service because:

__________________________________________________________________________________

__________________________________________________________________________________

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _______________ SHERIFF OF ________ COUNTY, ARKANSAS

By: ______________________________
[Signature of server]

__________________________________
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _______________ By: ______________________________
[Signature of server]

__________________________________
[Printed name]

Address: ______________________________________________________________
______________________________________________________________

Phone: ______________________________

Subscribed and sworn to before me this date: ______________

_______________________________
Notary Public

My commission expires: ____________________

Additional information regarding service or attempted service:
__________________________________________________________________________________
__________________________________________________________________________________